United States District Court
Southern District of Texas
**ENTERED**
August 08, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH RODERICK MORGAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-160 |
| | § | |
| MARK  PATTERSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

This civil rights action was filed by a federal detainee pursuant to 42 U.S.C. §
1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321
(1996), any prisoner action brought under federal law must be dismissed if the complaint
is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks
monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28
U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff Joseph Roderick Morgan's action is subject to
screening regardless whether he prepays the entire filing fee or proceeds as a pauper.
*Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*,
156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's *pro se* complaint must be read
indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be
accepted as true, unless they are clearly irrational or wholly incredible, *Denton v.
Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's claims
against Defendants be dismissed for failure to state a claim and/or as frivolous pursuant

to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that his Motion for Temporary Restraining Order ("TRO") (D.E. 8) be denied.

## I.    JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.    BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a federal detainee at the Coastal Bend Detention Center ("CBDC") in Robstown, Texas.[1]  On December 28, 2016, Plaintiff was charged by criminal indictment with one count of transporting or harboring an alien within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii).  *See United States v. Morgan*, Case No. 2:16-cr-1051 (S.D. Tex. Dec. 28, 2016).  Plaintiff subsequently pled guilty to Count One and is awaiting sentencing scheduled for August 24, 2017.

Plaintiff filed this lawsuit on May 9, 2017, raising claims related to his conditions of his confinement at the CBDC.  (D.E. 1).  Plaintiff named the following thirteen (13) individuals as defendants in his Original Complaint: (1) Assistant United States Attorney ("AUSA") Mark Patterson; (2) E. Barrera, CBDC detention officer; (3) J. Anderson, CBDC Sergeant; (4) W. Lieb, CBDC Captain; (5) M. Botello, CBDC Kitchen Captain; (6) L. Dabbs, CBDC Nurse; (7) C. Gonzalez, CBDC Unit Grievance Coordinator; (8) G. Head, CBDC Warden; (9) A. Andradae, CBDC Assistant Warden; (10) M. Hernandez,

---

[1]  The CBDC is operated by LCS Corrections Services, Inc., a privately-held corporation that contracts with both state and federal agencies to house offenders.

CBDC Captain; (11) V. Tello, CBDC Sergeant; (12) M. McGee, CBDC Sergeant; (12) L. Suandle, former CBDC Case Manager; and (13) K. Lopez, CBDC Case Manager. Plaintiff seeks declaratory, injunctive, and monetary relief.

In light of the conclusory and confusing nature of Plaintiff's allegations in his Original Complaint, the undersigned ordered Plaintiff on May 19, 2017, to file an amended complaint on a proper 42 U.S.C. § 1983 form and present all of his claims. (D.E. 9). With respect to his amended complaint, the undersigned directed Plaintiff to clearly list each defendant he seeks to sue and answer several specific questions related to why he is suing each particular defendant. (D.E. 9, p. 3).

Plaintiff has submitted his Amended Complaint, albeit not on the required § 1983 form. (D.E. 11 and 12). Plaintiff also has not provided specific answers to the questions set forth in the May 19 Order with respect to each defendant. Nevertheless, Plaintiff has attempted in good faith to comply with the May 19 Order, and the undersigned will consider his Amended Complaint as properly filed. Plaintiff names the following nineteen individuals in their individual and official capacities: (1) AUSA Patterson; (2) CBDC Warden Butch Head; (3) CBDC Assistant Warden Andradae; (4) CBDC Unit Grievance Coordinator Gonzalez; (5) M. Garcia, CBDC Librarian; (6) former CBDC Case Manager Suandle; (7) CBDC Case Manager Lopez; (8) CBDC Case Manager Flores; (9) CBDC Captain Lieb; (10) CBDC Captain Boggs; (11) CBDC Sergeant Anderson; (12) Barb Denison, Shamrock Consulting; (13) CBDC Kitchen Captain Botello; (14) CBDC Captain Hernandez; (15) CBDC Detention Officer Barrera; (16) CBDC Detention Officer Moreno; (17) CBDC Officer Gordon-White; (18) two unknown

detention officers serving lunch on January 1, 2017; and (19) Captain Baronis. (D.E. 11, pp. 2-3).[2]   Plaintiff reiterates in the Amended Complaint that he seeks declaratory, injunctive, and monetary relief. (D.E. 12, pp. 5-6).

Plaintiff's Amended Complaint is far from a model of clarity as he again presents his allegations in a confusing and haphazard fashion.   Nevertheless, as best as can be gleaned from this pleading, the following allegations were made in the Amended Complaint. (D.E. 11 and 12).

On some unspecified date, Kitchen Captain Botello served Plaintiff with a kosher meal plate that was contaminated with foreign substances, which caused the food to become rancid.   It appears that Plaintiff suffered gastrointestinal distress as a result of eating the contaminated kosher meal and sought medical help.   Plaintiff did not receive proper medical treatment with regard to his complaints of sour stomach, vomiting, and excess gas.   LVN Puerto further ignored the doctor's orders for Plaintiff to receive Gas-X pills.   While not named as a defendant in the Amended Complaint, LVN Puerto was involved in a close relationship with Captain Botello and has "helped perpetuate the duration and intensity of Plaintiff's obstacles to expressing his religious rights." (D.E. 12, p. 1).

On January 1, 2017, Defendant Botello did not provide Plaintiff with a "celebratory hot dog" that had been issued to every other inmate.   Because Plaintiff considered the "celebratory hot dog" to be kosher, Defendant Botello discriminated

---

[2] Plaintiff has not listed Nurse Dabbs, Sergeant Tello, and Sergeant McGee in his Amended Complaint.   These individuals, who were listed as defendants in the Original Complaint, should be dismissed from this action.

against Plaintiff by failing to serve Plaintiff with it.  On that same day, CBDC Detention Officers Barrera, Moreno, and two unknown females conspired to withhold Plaintiff's kosher lunch tray.  One of these defendants remarked to Plaintiff that: "Sex offenders don't deserve [k]osher trays."  (D.E. 11, p. 8).  Plaintiff later learned from other officers that his kosher lunch tray was inside the building all along.

Due to his hypoglycemic medical condition, Plaintiff received a doctor's approval for a high-calorie afternoon snack.  On January 16, 2017, however, Defendant Botello cornered Plaintiff while he was exercising in the recreation yard to verbally harass Plaintiff with respect to his diet.  Defendant Botello apparently used Spanish vulgarities and "chided" Plaintiff for costing her a bonus in connection with the prison food budget. According to Plaintiff, Defendant Botello "resisted and used her seniority to build a wheel conspiracy to harass and harm" Plaintiff due to being Jewish.  LVN Puerto also "is a component of the wheel conspiracy."  (Doc. 12, p. 1).

After Plaintiff and Defendant Botello engaged in their verbal altercation in the recreation yard on January 16, 2017, a disciplinary case ( Disciplinary Case No. 17-028 MA) was brought against Plaintiff.  Captain Lieb conducted the disciplinary case and deprived Plaintiff of the ability to collect witness statements, present evidence, or otherwise defend against the charges brought against him.

Captain Lieb sanctioned Plaintiff to seven days of disciplinary detention.  Plaintiff, however, was subjected to an extra two days of detention.   On the ninth day of detention, Plaintiff was escorted to the medical unit.  Along with a nurse, Captain Hernandez concocted a "suicide hoax" and forced Plaintiff to be placed in a Mental Health

Observation Cell ("MHOC") where he was constantly monitored for suicidal prevention from January 28-30, 2017.  The MHOC's conditions included cold temperatures, dried blood on both the sink and floor, and a mattress containing pepper spray.  Plaintiff was forced to shower without the ability to use a towel and defecate without the ability to use toilet paper.

Defendants Andradae and Gonzalez further conspired with Former Case Manager Suandle and Case Manager Lopez in failing to address the abuses suffered by Plaintiff when he was placed in the MHOC on January 28-30, 2017 and later on March 21-23, 2017.  Defendants Andradae and Gonzales also had knowledge of Captain Hernandez's anti-Semitic behavior, which was directed at Plaintiff for his Jewish faith and, more specifically, his right to receive kosher meals.

On February 3, 2017, after he returned to the general population, Plaintiff noticed that there were no sheets and blankets in his bag.  After informing Correctional Officer Gordon-White that he needed a blanket and sheets, Officer Gordon-White exaggerated his "welcome home" comments, which provoked Plaintiff to curse at the officer. Plaintiff then received a disciplinary case for his conduct.

On February 7-9, 2017, Shamrock Consulting's Barb Denison performed an audit at the CBDC pursuant to the Prison Rape Elimination Act ("PREA").  On February 9, 2017, Plaintiff met with Defendant Denison as part of the audit to discuss the incident on January 1, 2017, when Plaintiff was told that "sex offenders don't deserve [k]osher Trays."  Captain Lieb and Sergeant Anderson, in an area of the CBDC not covered by video cameras, marched Plaintiff to the interview in leg restraints faster than he was able

6 / 33

to manage safely.  By having to march in double-time with leg restraints, Plaintiff suffered five lacerations and other injuries to his feet which went untreated by medical. Plaintiff believes that Deputy Warden Andradae ordered Captain Lieb and Sergeant Anderson to march Plaintiff in such a dangerous fashion.

During the interview with Defendant Denison, Plaintiff was placed on an examination table where he experienced discomfort from the lacerations and injuries suffered via his transportation to the interview.  Defendant Denison gave up her own chair in an effort to relieve Plaintiff's distress.  Plaintiff responded to Defendant Denison that he could purchase kosher products from the commissary.

On April 26, 2017, Plaintiff was dispatched to the biggest recreation yard alone. Officer Moreno informed Plaintiff that he was kept away from other inmates "per major." Officer Moreno refused Plaintiff's request to talk to his supervisors as to why he was forced to be segregated from other inmates during recreation.  Plaintiff observed that ranking officers were available to discuss his segregation from other inmates during recreation. Another officer ordered Plaintiff to tuck in his shirt before seeing one of the captains on this matter.  Plaintiff, however, did not comply with this order as it was impossible for tall individuals like him to properly tuck in his shirt.  In protest, Plaintiff proceeded "to take the orange off."  (D.E. 11-2, p. 12).

Captain Baronis, along with another captain and two officers, met Plaintiff in the recreation yard.  Captain Baronis ordered Plaintiff to face the fence, and Plaintiff complied with the order.  Captain Baronis proceeded to get inside Plaintiff's personal "two-feet safety zone" and press his right shoulder into Plaintiff's left upper back.

Captain Baronis screamed at Plaintiff to get on the ground.  Plaintiff, despite having fears that dangerous fleas and spiders were on the ground, responded by lowering himself to the ground.  Captain Baronis then placed Plaintiff in some sort of "Guillotine neck bar," a move more suitable for the "MMA," which hindered Plaintiff's breathing for two to three minutes.   While Captain Baronis was holding Plaintiff's neck in a painful manner, another captain placed Plaintiff in leg and arm restraints.  Ultimately, Captain Baronis had to be ordered to let Plaintiff go.

On May 21, 2017, Captain Hernandez opened a sealed envelope addressed to Plaintiff's attorney in the federal criminal proceeding.  The envelope contained evidence of falsified medical records.  According to Plaintiff, Captain Hernandez also held the envelope to the light in order to ascertain the envelope's contents.

Warden Head and Deputy Warden Andradae failed to supply Librarian Garcia with adequate support and legal materials in the law library.  Plaintiff advocated that Librarian Garcia should receive additional education in order to better champion the constitutional rights of those individuals most in need.

Plaintiff further complained about Deputy Warden Andradae's use of three different types of Step Two forms.  Plaintiff was unable at times to acquire the proper Step Two forms from Librarian Garcia.  Deputy Warden Andradae and Unit Grievance Coordinator Gonzalez "purposely erred" in failing to resolve to Plaintiff's satisfaction two different grievances filed by Plaintiff.  AUSA Patterson and Warden Butch Head, as accountable supervisors, "failed in their oversight by allowing [Defendants Andradae and

Gonzalez] to disregard multiple Step One and Step Two Grievances filed" and in otherwise providing any answers or relief to Plaintiff.

## III.  LEGAL STANDARD.

A prisoner's civil rights action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  *Id.*

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  A defendant acts under the color of state law if he misuses or abuses official power bad if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

Federal officials acting under the color of federal law are not subject to suit under § 1983, and the statute likewise does not reach purely private conduct.  *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1972).  When the defendants are private actors, the challenged "conduct allegedly causing the deprivation of a federal right" must

be "fairly attributable to the State" for § 1983 to apply. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). *See also Doe v. United States*, 831 F.3d 309, 314-17 (5th Cir. 2016) (affirming grant of summary judgment for independent corrections company, finding it was performing a federal function when the county had no involvement in the day-to-day operations of the facility).

In contrast to § 1983 actions brought against state actors, civil rights actions brought against federal actors generally arise under *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "A *Bivens* action is the counterpart to a § 1983 civil rights action and extends to parties injured by federal actors the protections afforded under § 1983 to parties injured by state actors." *Grainger v. Federal Bureau of Prisons*, No. C-08-387, 2009 WL 47127, at *2 (S.D. Tex. Jan. 6, 2009) (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

Plaintiff's action has been docketed as one arising under § 1983. However, no allegations have been made to indicate that the state had any regular involvement in the day-to-day operations of the CBDC. *See Doe*, 831 F.3d at 314. Rather, the CBDC is operated by LCS Corrections Services, Inc. ("LCS"), a privately held corporation that has contracted with the federal government to house federal pre-trial detainees and convicted federal prisoners at the CBDC. *See Ahern v. United States*, No. 2:14-CV-259, 2014 WL 5824829, at *1 n.2 (S.D. Tex. Nov. 10, 2014); *Soto v. LCS Corrections Services, Inc.*, No. 2:12-CV-130, 2013 WL 4012627, at *4 (S.D. Tex. Aug. 5, 2013). As private actors, none of the defendants employed at the CBDC can be said to have worked under the

color of state law. Neither the LCS nor its employees working at the CBDC, therefore, are subject to suit under § 1983. Accordingly, to the extent that Plaintiff seeks to raise any claims in this case under § 1983, it is respectfully recommended that such claims be dismissed for failure to state a claim.[3]

Because the CBDC is operating as a private facility to house federal detainees and convicted prisoners, Plaintiff's allegations may be brought against the CBDC officials as claims arising under *Bivens*. The Supreme Court, however, has held that no implied private right of action exists under *Bivens* for damages against private entities such as LCS for alleged constitutional violations while acting under color of federal law. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70-73 (2001). Furthermore, the Supreme Court has refused to imply a remedy under *Bivens* against prison employees at a privately-operated federal prison where state tort law provides an adequate alternative remedy. *See Minneci v. Pollard*, 132 S. Ct. 617, 626 (2012). With these guiding principles in mind, the undersigned will consider below whether Plaintiff has stated any actionable *Bivens* claims in his lawsuit.

## IV.   DISCUSSION

### A.   Official Capacity Claims

A *Bivens* action only provides a remedy for victims of constitutional violations by federal officers in their individual capacities. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). The United States, federal agencies, and

---

[3] Plaintiff names two defendants who are not CBDC employees: AUSA Mark Patterson and Shamrock Consulting's Barb Denison. While AUSA Patterson is a federal actor for purposes of a *Bivens* action, Defendant Denison is private actor as she works for a private company. As such, it is respectfully recommended that Plaintiff's § 1983 claims be dismissed against these two defendants as well.

federal employees sued in their official capacities, however, are protected by the doctrine of sovereign immunity from constitutional claims asserted under *Bivens*.  *Gibson v. Federal Bureau of Prisons*, 121 F. App'x 549, 551(5th Cir. 2004) (per curiam) (citing *Malesko*, 534 U.S. at 71-72).  Thus, to the extent that Plaintiff states any *Bivens* claims in this action, such claims against each individual Defendant in his or her official capacity is barred.  Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### B.    Claims Barred by *Minneci*

#### (1)    Deliberate Indifference (Medical Needs)

Plaintiff alleges that he did not receive proper medical care after eating a contaminated kosher meal served by Kitchen Captain Botello, which caused him to suffer gastrointestinal distress.  Plaintiff alleges in general that he received inadequate medical treatment upon complaining of a sour stomach, vomiting, and excess gas and that LVN Puerto ignored the doctor's orders for Plaintiff to receive Gas-X pills.

Plaintiff further alleges that he suffered five lacerations and other injuries to his feet due to having to march in double-time with leg restraints, which went untreated by the medical unit.  Plaintiff alleges that Defendant Denison interviewed him and observed Plaintiff as experiencing discomfort on an examination table due to the five lacerations suffered on the way to the interview.  According to Plaintiff, Defendant Denison gave up her own chair in order to relieve Plaintiff from discomfort.  While not expressly stated, Plaintiff's allegations imply that Defendant Denison should have done more to relieve his pain.

While failing to name any medical personnel as defendants with respect to his denial-of-medical-care claims, Plaintiff presents allegations that CBDC prison officials and Defendant Denison acted with deliberate indifference to his medical needs.[4]  The Supreme Court in *Minneci*, however, has recognized that claims of improper or inadequate medical care typically fall within the scope of traditional state tort law. *Minneci*, 132 U.S. at 625 (explaining that the law in Texas as well as seven other states, where privately managed secure federal facilities are located, "imposes federal tort duties of reasonable care (including medical care) on prison employees").  The *Minneci* court further explained that the available state law remedy need not be "perfectly congruent" with the potential *Bivens* remedy.  *Id.*  Because Plaintiff has available state remedies to pursue negligence and/or medical malpractice claims, he cannot pursue *Bivens* claims for deliberate indifference to his serious medical needs.   Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims be dismissed.

### (2)   Deliberate Indifference (Conditions of Confinement)

Plaintiff alleges that he was placed in the MHOC on two occasions, January 28-30, 2017 and later on March 21-23, 2017, where he was constantly monitored for suicide prevention.   According to Plaintiff, the MHOC's conditions included cold temperatures, dried blood on both the sink and floor, and a mattress containing pepper spray.  Plaintiff

---

[4] Deliberate indifference claims made by federal pretrial detainees, such as Plaintiff, are cognizable under the Fifth Amendment's Due Process Clause.  *See Bell v. Wolfish*, 441 U.S. 520, 530-32 (1979); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *Anderson v. Capps*, No. 3:02-CV-455-L, 2004 WL 1418795, at *2 n.3 (N.D. Tex. Jun. 22, 2004).  The same "deliberate indifference standard is used for measuring both a pretrial detainee's due process rights and a convicted prisoner's Eighth Amendment rights to be secure in their basic human needs." *Anderson*, 2004 WL 1418795, at *4 n.4 (citing *Hare v. City of Corinth*, 74 F.3d 633, 647 (5th Cir. 1996)).

further alleges that was forced to shower without the ability to use a towel and defecate without the ability to use toilet paper.  Plaintiff complains that Defendants Andradae and Gonzalez conspired with Former Case Manager Suandle and Case Manager Lopez in failing to address the abuses suffered by Plaintiff when he was placed in the MHOC.

Similar to his denial-of-medical-care claims, Plaintiff's claims regarding the conditions of his confinement in the MHOC are the types of claims that typically fall within the scope of traditional state tort law.  *See Minneci*, 132 S. Ct. at 625-26.  *See also Rroku v. Cole*, No. 1:15-CV-294, 2016 WL 4821137, at *2-3 (W.D. La. Aug. 11, 2016) (holding that the conditions-of-confinement claims raised by an immigration detainee held in a private facility fall within traditional Louisiana state tort law and are subject to dismissal).  Because Plaintiff has available state remedies in Texas to pursue negligence claims against the CBDC employees, he cannot pursue *Bivens* claims for deliberate indifference.  Accordingly, it is respectfully recommended that these deliberate indifference claims be dismissed with prejudice.

### (3)  Excessive Force

Plaintiff alleges that Captain Lieb and Sergeant Anderson, in an area of the CBDC not covered by video cameras, marched Plaintiff to an interview in leg restraints faster than he was able to manage safely and that he Plaintiff suffered five lacerations as a result.  Plaintiff further alleges that, on another occasion, Captain Baronis placed Plaintiff in a "Guillotine neck bar," which hindered Plaintiff's breathing for two to three minutes.  According to Plaintiff, Captain Baronis did not let go until directed to do so by another captain.

14 / 33

The standard for determining whether a pretrial detainee has been subjected to excessive force is whether the officer "purposely or knowingly" used force against the detainee that "was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). However, Plaintiff's excessive force claims against CBDC employees are barred under *Bivens* "as state law provides an adequate remedy for assault and battery." *See Palacios v. United States Marshals Service*, No. 11-CV-009, 2012 WL 12957204, at *4 (W.D. Tex. Feb. 23, 2012) (citing *Minneci*, 132 S. Ct. at 625). Accordingly, it is respectfully recommended that Plaintiff's excessive force claims be dismissed with prejudice.

## C.   Remaining Claims

### (1)  First Amendment Claims (Free Exercise of his Religious Faith)

Plaintiff asserts that the denial of kosher meals prevented him from exercising his Jewish faith, in violation of his First Amendment rights. In support of this claim, Plaintiff alleges that on one occasion Captain Botello served Plaintiff with a kosher meal plate that was contaminated with foreign substances. Plaintiff further alleges that on January 1, 2017, Defendant Botello did not provide Plaintiff with a kosher hot dog that had been issued to every other inmate. On that same day, Plaintiff alleges that CBDC Detention Officers Barrera, Moreno, and two unknown females conspired to withhold Plaintiff's kosher lunch tray and that one of these defendants told Plaintiff that: "Sex offenders don't deserve [k]osher trays." (D.E. 11, p. 8). Plaintiff, however, later learned from other officers that his kosher lunch tray was inside the building all along.

While *Minneci* bars Plaintiff's deliberate indifference and excessive force claims, it does not appear that his First Amendment claims are the type of claims that fall within the scope of traditional tort law.  *See Young v. Tryon*, No. 12-CV-6251CJS, 2015 WL 309431, at *9 (W.D.N.Y. Jan. 23, 2015) (explaining that it is unclear whether the plaintiff's constitutional claims implicating his right to privacy and access to courts are the type of claims against private prison employees that typically fall within the scope of traditional state tort law); *McKaney v. Keeton*, No. 12-148-PHX-GMS, 2012 WL 1718056, at *3 (D. Ariz. May 15, 2012) (stating that it remains unclear following *Minneci* whether the Plaintiff's First Amendment claims against employees of a private prison "are of the type which fall within the scope of traditional tort law").  Thus, out of an abundance of caution, the undersigned will consider whether Plaintiff's First Amendment claims relating to the exercise of his Jewish faith state a claim for relief under *Bivens*.[5]

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of

---

[5] Plaintiff's allegations raise many other claims which typically do not fall within the scope of traditional tort law. As with Plaintiff's First Amendment claim related to his right to receive kosher meals, the undersigned will consider below in detail whether these claims state a claim for relief under *Bivens*.

the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective.  *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Fifth Circuit Court of Appeals has considered whether prison officials' failure to provide a kosher diet to prisoners violates an inmate's First Amendment right to practice his religion.  *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007).  In *Baranowski*, the Fifth Circuit rejected the inmate's First Amendment claim due in part to the high costs of providing kosher meals.  *Id.* at 122.  In rejecting the inmate's challenge, the *Baranowski* court further noted prior Fifth Circuit decisions that "prisons need not respond to particularized religious dietary requests to comply with the First Amendment."  *Id.* (citing *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988) and *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986)).

Other than the denial of kosher meals, Plaintiff alleges no facts to indicate that he is being deprived of any other means to express his Jewish faith.  Plaintiff's First Amendment challenge with respect to the denial of kosher meals, however, is foreclosed by the holding in *Baranowski*.  *See Corbeil v. Moore*, No. 08-CV-1072, 2009 WL 320738, at *2 (W.D. La. Jan. 30, 2009) (holding that the plaintiff's First Amendment claim challenging to the prison's failure to provide him with kosher meals was frivolous

17 / 33

based on established Fifth Circuit and Supreme Court jurisprudence, including the Fifth Circuit's decision in *Baranowski*).

Even if the CBDC were constitutionally required to provide Plaintiff with kosher meals, his First Amendment challenge would still fail to state a claim. Plaintiff does not allege in his Amended Complaint that he was being denied kosher meals pursuant to any prison rule, regulation, or policy. Rather, his claim only concerns isolated instances where he was served a contaminated kosher meal on one occasion, was denied a "celebratory hot dog" on a second occasion, and was denied access to a kosher lunch tray on a third occasion for a temporary period of time.[6]

In an analogous context, isolated incidents of missing religious services are generally not treated as First Amendment violations. *See Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (holding that the fact an inmate could not attend all of the religious services he wanted and was occasionally prevented by circumstances from attending services did not amount to a constitutional violation). Thus, even assuming the CBDC was constitutionally required to provide him with a kosher diet, Plaintiff's allegations of isolated incidents relating to the denial of kosher meals are insufficient to state a First Amendment claim. *See Joseph v. Ware*, No. 07-1297, 2007 WL 4144923, at *2 (W.D. La. Oct. 22, 2007). Accordingly, it is respectfully recommended that Plaintiff's

---

[6] A review of Plaintiff's complaint reveals that his ability to consume kosher meals on a regular basis was not impaired. Rather than seek injunctive relief in the form of compelling CBDC prison officials to provide him with a kosher diet, Plaintiff instead merely seeks allowances for inmates with special religious diets to heat up their own meals. (D.E. 12, p. 5). In addition, Plaintiff responded to Defendant Denison, the individual conducting a PREA audit of the CBDC, that he also could purchase kosher products from the commissary. (D.E. 11-2, p. 1).

First Amendment claim challenging the denial of kosher meals be dismissed with prejudice.

### (2)  RLUIPA Claim

While not referenced in his Amended Complaint, the Court will consider whether Plaintiff's allegations concerning the denial of kosher meals state a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*  The RLUPIA "poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion."  *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004).  Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc.

RLUIPA § 3 addresses restrictions on the religious exercise of institutionalized persons.  42 U.S.C. § 2000cc-1, § 3.   This section provides that "[n]o government shall impose a substantial burden on the religious exercise' of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering" that interest.

In *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012), the Fifth Circuit considered whether a Jewish prisoner's claim that he was denied a kosher diet violated RLUIPA.   In reversing the district court's grant of summary judgment, the Fifth Circuit concluded that the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) had placed a substantial burden on the Jewish prisoner's religious exercise and that a genuine issue of material fact existed as to

whether the TDCJ-CID employed the least restrictive means of achieving the government's interest by forcing a prisoner to pay for kosher meals. *Id.* at 791-93.

In this case, however, Plaintiff does not challenge a CBDC rule, policy, or practice which operated to deny him his kosher diet. As discussed above, Plaintiff's allegations only reference isolated incidents in which his ability to receive kosher meals was impaired. Such isolated instances fail to constitute a substantial burden on his right to practice his Jewish faith. *See Thompson v. Quarterman*, No. V-01-01, 2007 WL 2900564, at *2 (S.D. Tex. Sep. 30, 2007) (holding that "[a]n isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion"). Accordingly, it is respectfully recommended that Plaintiff's RLUIPA claim challenging the denial of kosher meals be dismissed with prejudice.

### (3)   First Amendment Claims (Access to Courts and Free Speech)

### Captain Hernandez

On May 21, 2017, Captain Hernandez opened a sealed envelope addressed to Plaintiff's attorney in the federal criminal proceeding. The envelope, according to Plaintiff, contained evidence of falsified medical records. Plaintiff's claim regarding the opening of his outgoing legal mail implicates his constitutional rights of access to courts and free speech under the First Amendment. *See Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).

Prisoners have a constitutionally-protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). To

state a cognizable claim for denial of access to courts based on the opening of legal mail, Plaintiff must show that his position as a litigant was somehow prejudiced. *Walker*, 4 F.3d at 413. Plaintiff, however, alleges no facts to suggest how the opening of his legal mail on a single occasion impacted or otherwise prejudiced his federal criminal case. Plaintiff, therefore, has not stated a denial-of-access-to-courts claim with regard to the opening of his legal mail.

Interference with a prisoner's legal mail by a prison official may violate the prisoner's right to free speech, that is, freedom from unjustified governmental interference with communication. *Brewer*, 3 F.3d at 820. Prisoners have a First Amendment right both to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).

"A prisoner's First Amendment right is not automatically violated upon the first inspection of [his] outgoing or incoming mail, legal or otherwise." *Cobos v. Ector County Courthouse*, No. 15-CV-00105, 2015 WL 13344085, at *5 (W.D. Tex. Aug. 5, 2015) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974)). While prisoners have a right to be free from the "arbitrary censorship" of outgoing mail, such right is not the equivalent of freedom from inspection or perusal. *See Lavergne v. Cain*, No. 15-0034, 2016 WL 8679227, at *10 (M.D. La. Aug. 19, 2016) (citing *Wolff*, 418 U.S. at 576 and *Brewer*, 3 F.3d at 826). Thus, should the prisoner's mail be "censored, destroyed, or misplaced by a prison official without a legitimate penological reason, a prisoner may have sufficient grounds for a constitutional violation." *Cobos*, 2015 WL 13344085, at *5 (citing *Pell*, 417 U.S. at 822).

21 / 33

Plaintiff's recitation of facts concerning Captain Hernandez's opening of his legal mail is confusing.  (*See* Doc. 11-2 , pp. 6-18)  As best as can be deciphered from his description of the incident, Captain Hernandez held the envelope containing the legal mail to the light and then opened it for inspection.  Plaintiff provides no specific facts or coherent explanation to indicate that his legal mail was censored, destroyed, or misplaced by Captain Hernandez.[7]  Plaintiff's allegations that Captain Hernandez opened the legal mail, without censoring it, fail to state a First Amendment claim.

Accordingly, it is respectfully recommended that Plaintiff's First Amendment claims against Captain Hernandez regarding the opening of Plaintiff's legal mail on one occasion be dismissed with prejudice.

### Warden Head, Deputy Warden Andradae, and Librarian Garcia

Plaintiff alleges that Warden Head and Deputy Warden Andradae failed to supply Librarian Garcia with adequate support and legal materials in the law library.  Plaintiff also complains that Librarian Garcia should receive additional education in order to better champion the constitutional rights of those individuals most in need.  Liberally construed, Plaintiff claims that the inadequate law library and Librarian Garcia's lack of legal education have denied him access to the courts.

The right of access to courts requires prison officials either to make a law library facility available to inmates or to provide alternative means to achieve access to the courts.  *Bounds*, 430 U.S. at 830.  There exists no "abstract, freestanding right to a law

---

[7]  While indicating that "CBDC employees went to great lengths to recover the documents," Plaintiff does not state in his Amended Complaint that Captain Hernandez actually censored the mail and prevented Plaintiff from sending it to his attorney.  (*See* D.E. 11-2, p. 8).  Rather, Plaintiff's claim focuses on Captain Hernandez's act of opening the legal mail.

library of legal assistance, and an inmate like Plaintiff cannot establish the requisite "actual injury" for an access to courts claim "simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Rather, an inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

Plaintiff's allegations only attack the law library and Librarian Garcia's education level as being subpar. He provides no allegations to indicate that these shortcomings have hindered his ability to pursue a legal claim or otherwise cause any actual injury to Plaintiff. Accordingly, it is respectfully recommended that this denial-of-access-to-courts claim be dismissed with prejudice.

### (4)   Disciplinary Case

After Plaintiff and Defendant Botello engaged in a verbal altercation in the recreation yard on January 16, 2017, a disciplinary case (Disciplinary Case No. 17-028 MA) was brought against Plaintiff. Plaintiff alleges that Captain Lieb conducted the disciplinary hearing and deprived Plaintiff of the ability to collect witness statements, present evidence, or otherwise prepare for the hearing. Plaintiff alleges that Captain Lieb then sanctioned Plaintiff to seven days of disciplinary detention. Liberally construed, Plaintiff claims that Captain Lieb violated his due process rights in connection with this disciplinary case.

The Supreme Court has held that convicted prisoners may be disciplined without first being afforded a disciplinary hearing so long as the resulting punishment for being

adjudicated guilty of the disciplinary infraction does not impose and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court cited *Bell v. Wolfish*, 441 U.S. 520 (1979) as setting forth the correct standard for assessing the due process rights guaranteed to pretrial detainees. *Sandin*, 515 U.S. at 484. Thus, in contrast to convicted inmates, the punishment of a pretrial detainee before an adjudication of guilt violates the detainee's constitutional right to due process. *Bell*, 441 U.S. at 535.

As noted above, Plaintiff was a federal pretrial detainee at the time of the January 16, 2017 disciplinary hearing. "[D]etainees may be subject to 'the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.'" *Guillory v. Neustrom*, No. 09-244, 2009 WL 2406302, at *3 (W.D. La. Aug. 3, 2009) (quoting *Bell*, 441 U.S. at 535). Furthermore, "[r]estrictions on pretrial detainees that are reasonably related to a prison's interest in maintaining order and security do not rise to the level of constitutionally prohibited punishment." *Cooper v. Bowles*, No. 3:91-CV-2622, 1997 WL 361879, at *1 (N.D. Tex. Jun. 20, 1997) (citing *Bell*, 441 U.S. at 539-40).

The Supreme Court has recognized two different standards concerning due process requirement for prison disciplinary proceedings, depending on the sanctions imposed and the consequences flowing from the sanctions. *See Wolff*, 418 U.S. at 563-66. A prisoner punished by solitary confinement and the loss of good time credits is entitled to receive: (1) written notice of the charges against him at least 24 hours before the hearing; (2) a

24 / 33

written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless such procedures would create a security risk. *Walker*, 4 F.3d at 412 (5th Cir. 1993) (citing *Wolff*, 418 U.S. at 563-66). When the punishment has no effect on parole, such as a short period of administrative segregation, an inmate is entitled to notice and an opportunity to present a statement in an informal nonadversary evidentiary review. *Walker*, 4 F.3d at 412 (citing *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

In this case, the less stringent standard applies as Plaintiff was not sanctioned at the January 16, 2017 disciplinary hearing with the loss of good time credits and was instead sanctioned with a short period of time in disciplinary detention. While complaining that he did not have the opportunity to collect witness statements or present evidence at the hearing, it is apparent that Plaintiff had notice of the hearing as it related to his verbal altercation with Captain Botello, was present at the informal hearing, and could present his own verbal statement at the hearing. Plaintiff, therefore, received all of the process he was due at the disciplinary hearing.

Furthermore, "[pretrial] detainees are not immune from prison disciplinary actions." *Guillory*, 2009 WL 2406302, at *3 (citing *Frank v. Larpenter*, 234 F.3d 706 (5th Cir. 2000) (Table). Even accepting Plaintiff's short-term stay in disciplinary detention as a punitive measure, such a sanction was imposed on him for violating a prison disciplinary rule and not as punishment for the crime he was charged in his federal criminal case. *See Guillory*, 2009 WL 2406302, at *3 (recognizing that "prison officials

may impose punishment to enforce reasonable disciplinary requirements *so long as the punishment is not for prior unproven [criminal] conduct*) (citing *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995)) (emphasis in original). Accordingly, it is respectfully recommended that Plaintiff's due process claim against Captain Lieb be dismissed.

### (5) Verbal Harassment

Plaintiff alleges that, on January 16, 2017, Defendant Botello cornered Plaintiff while he was exercising in the recreation yard to verbally harass Plaintiff with respect to his diet. According to Plaintiff, Defendant Botello apparently used Spanish vulgarities and "chided" Plaintiff for costing her a bonus in connection with the prison food budget. Plaintiff further alleges that, when he returned from detention, Correctional Officer Gordon-White exaggerated his "welcome home" comments in a condescending manner, which provoked Plaintiff to curse at the officer.

Even assuming Defendants Botello and Gordon-While were rude and abusive to Plaintiff with their verbal comments, such allegations fail to rise to the level of constitutional violations. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable" constitutional claims); *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (concluding that verbal threats do not rise to the level of a constitutional violation). Accordingly, it is respectfully recommended that Plaintiff's claims of verbal harassment be dismissed with prejudice.

*(6)  Equal Protection*

Throughout his Amended Complaint, Plaintiff alleges that various defendants have engaged in anti-Semitic behavior against him and have harmed him based on his Jewish faith.  Liberally construed, Plaintiff attempts to assert an Equal Protection claim by suggesting that he is being treated less favorably than inmates of other faiths.

To state an equal protection claim, Plaintiff "must allege . . . that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001).  A plaintiff fails to state an equal protection violation when he "fails to allege any facts showing that [others were] similarly situated."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015).

Plaintiff's allegations of discriminatory treatment are conclusory at best.   Plaintiff alleges no facts to indicate that similarly-situated inmates of other faiths are receiving superior treatment from CBDC officials.  Plaintiff's conclusory allegations, therefore, are insufficient to state an equal protection claim.  *See Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987).  Accordingly, it is respectfully recommended that Plaintiff's equal protection claim be dismissed with prejudice.

*(7)  Grievances*

 Plaintiff makes the following complaints regarding the grievance process: (1) Deputy Warden Andradae uses three different types of Step Two forms; (2) Plaintiff is unable at times to acquire the proper Step Two forms from Librarian Garcia; (3)  Deputy Warden Andradae and Unit Grievance Coordinator Gonzalez "purposely erred" in failing

to resolve to Plaintiff's satisfaction two different grievances filed by Plaintiff; and (4) AUSA Patterson and Warden Butch Head, as accountable supervisors, "failed in their oversight by allowing [Defendants Andradae and Gonzalez] to disregard multiple Step One and Step Two Grievances filed" and in otherwise providing any answers or relief to Plaintiff.

Inmates do not have a constitutionally-protected liberty interest in having their grievances resolved to their satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) (explaining that, "[a]s he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."); *Lijadu v. I.N.S.*, No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) (recognizing that "detainees do not have a constitutionally protected right to a grievance procedure—much less one that complies with their own personal preferences) (citation and internal quotation marks omitted)). Because Plaintiff has no constitutional right to have any of his grievances resolved in his favor, it is respectfully recommended that his due process claims challenging the CBDC's grievance process be dismissed with prejudice.

Moreover, Plaintiff improperly attempts to implicate AUSA Patterson as a supervisor with respect to overseeing the grievance process at the CBDC.  Plaintiff alleges no facts to indicate that AUSA Patterson, in his role as Assistant United States Attorney, has any supervisory responsibility over any facet of the CBDC facility

including the grievance process.[8]  Thus, any claim against AUSA Patterson with regard to the grievance process is also subject to dismissal as he is not a supervisor at the CBDC and Plaintiff failed to allege that he was personally involved in the handling of Plaintiff's grievances.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

*(8)  Conspiracy*

Plaintiff alleges that Captain Botello and LVN are part of a "wheel conspiracy" to harass and harm Plaintiff due to his Jewish faith.  Plaintiff further alleges that Defendants Andradae and Gonzalez conspired with Former Case Manager Suandle and Case Manager Lopez in failing to address the abuses suffered by Plaintiff when he was placed in a MHOC on January 28-30, 2017 and later on March 21-23, 2017.

To allege a claim of conspiracy to deprive one of his constitutional rights, a plaintiff must allege, (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.  *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).  "A plaintiff must also 'allege specific facts to show an agreement.'"  *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (quoting *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004)).

---

[8] Any prosecutorial decisions made by AUSA Patterson are protected by sovereign immunity.  *Imbler v. Pachtman,* 424 U.S. 409, 427 (1978);  *Buckley v. Fitzsimmons, et al.*, 509 U.S. 259,273-74 (1993).

Plaintiff has alleged no specific facts, other than his personal belief, that there was a conspiracy to deprive Plaintiff of his constitutional rights. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983). Plaintiff otherwise alleges no facts referencing the existence of an agreement between any of the named defendants to harm Plaintiff. Accordingly, it is respectfully recommended that Plaintiff's conspiracy claims be dismissed with prejudice.

> *(9)  State Law Claims*

It is further respectfully recommended that any possible state law claims Plaintiff may be asserting be dismissed without prejudice. *See 28 U.S.C. § 1367(c)(3)* (supplemental jurisdiction may be declined if "the district court has dismissed all claims over which it has original jurisdiction"). To the extent Plaintiff has a viable cause of action for negligence, medical malpractice, or assault and battery, those claims against the private defendants should be brought in state court.

### D.   Plaintiff's Motion for a TRO

In his Motion for a TRO, Plaintiff references his allegations in the Amended Complaint that: (1) on February 7, 2017, Sergeant Anderson forced him to march too fast in leg restraints, causing lacerations and injuries to his feet; and (2) on April 26, 2017, Captain Baronis placed Plaintiff "in a UFC-style choke hold" for over two minutes, which caused injuries to Plaintiff's throat, eyes, and ears. (D.E. 8, pp. 1-2). Plaintiff further states that Defendants Anderson, Baronis, and Garcia "contrived" two disciplinary

cases against Plaintiff.   (D.E. 8, p. 2).   Plaintiff seeks a TRO compelling these three defendants to be moved off the building where Plaintiff is housed.

In order to obtain a TRO or preliminary injunctive relief under Federal Rule of Civil Procedure 65(a), the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013).   Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance.   *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted).   Plaintiff mus**t** carry the burden as to all four elements before preliminary injunctive relief may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Each of Plaintiff's claims asserted in his Amended Complaint, including the excessive force claims referenced in this motion, are subject to dismissal for failure to state a claim.   Thus, because Plaintiff cannot demonstrate a likelihood of success on the merits of his lawsuit, he is not entitled to any preliminary injunctive relief in the form of a TRO.   Accordingly, it is respectfully recommended that Plaintiff's Motion for a TRO be denied.

## V.     CONCLUSION.

For the reasons stated above, it is respectfully recommended that Plaintiff's action against Defendants be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended further that his Motion for a TRO (D.E. 8) be denied.  Lastly, it is respectfully recommended that any possible state law claims Plaintiff may be asserting be dismissed without prejudice.

Because this dismissal meets the requirement of a "strike" for purposes of 28 U.S.C. § 1915(g), it is respectfully recommended that the Clerk of the Court forward a copy of this Memorandum and Recommendation to the "Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov."

Respectfully submitted this 8th day of August, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).